**[Cite as *Toledo v. Cox*, 2018-Ohio-3821.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                  Court of Appeals No. L-18-1014

        Appellee                          Trial Court No. CRB-17-05570

v.

Bernard Rashad Cox                            **DECISION AND JUDGMENT**

        Appellant                        Decided:  September 21, 2018

* * * * *

David Toska, City of Toledo Chief Prosecutor, and Henry Schaefer,
Assistant Prosecutor, for appellee.

Melissa L. Dybala, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a November 30, 2017 judgment of the Toledo

Municipal Court, Lucas County, Ohio, finding appellant guilty following a bench trial on

one charge of assault, in violation of R.C. 2903.13, a misdemeanor of the first degree,

one count of resisting arrest, in violation of R.C. 2921.33, a misdemeanor of the first

degree, and one count of obstruction, in violation of R.C. 2921.31, a misdemeanor of the first degree. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Bernard Rashad Cox, sets forth the following assignment of error:

I: THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS BY [NOT] CONDUCTING A TRIAL BY AN IMPARTIAL FINDER OF FACT.

{¶ 3} The following undisputed facts are relevant to this appeal. On May 7, 2017, in the middle of the night, appellant went to a Point Place Barney's Convenience Mart to purchase lottery tickets and alcohol.

{¶ 4} While sitting in his vehicle examining his scratch off lottery tickets, appellant conceded to playing his car stereo music at an extremely loud volume contrary to an applicable noise ordinance.

{¶ 5} A local police officer in uniform and in his personal vehicle was driving home for the night after completing his shift and pulled into the same Barney's Convenience Mart parking lot. The officer parked his vehicle in order to go into the store and make a purchase.

{¶ 6} Upon exiting his vehicle and hearing the loud music blaring from appellant's vehicle, the officer stopped and gave appellant a non-verbal, disapproving look in the

2.

hope that appellant would adjust his stereo volume to an appropriate noise level. Appellant immediately became agitated at the officer.

{¶ 7} Appellant mistakenly believed both that noise ordinances do not apply to private property and that the officer, "[D]idn't have [the] right," to address the loud music being played by appellant.

{¶ 8} Instead of adjusting the car stereo volume downwards to a lawful level, appellant turned his music up even louder, directed a smile or smirk at the officer, and backed up his vehicle striking the officer's parked vehicle.

{¶ 9} These events, including appellant's loud music and incident with the officer's vehicle, was witnessed and collaborated by a staff member on duty at Barney's Convenience Mart at the time of these events. The witness was positioned with a full view of the location and was standing outside in close proximity to the incident as it occurred.

{¶ 10} The record reflects that appellant was uncooperative and adversarial throughout the incident. Following the accident, appellant told the officer that the officer had no right to do anything because the officer was, "not on duty," refused to exchange information with the officer, and attempted to leave the scene.

{¶ 11} Appellant further told the officer that he was not going to stop him from leaving and also felt compelled to convey to the officer that he possessed a concealed weapon permit. Faced with these facts and circumstances, the officer called for backup to be dispatched to the scene.

3.

{¶ 12} The officer placed himself in between appellant and appellant's vehicle in an effort to prevent appellant from fleeing. In response, appellant threatened to assault the officer and assumed a boxer's stance. At this juncture, appellant pushed the officer. Shortly thereafter, additional officers arrived on the scene and appellant was placed under arrest.

{¶ 13} On November 30, 2017, the case proceeded to a bench trial. At the outset, it was conveyed to the court that appellee had offered to amend one of the three charges to a lesser offense, dismiss the remaining two charges, and request no jail time in order to resolve the matter via a negotiated plea agreement. Appellant rejected the proposal.

{¶ 14} The record reflects that both the trial court and defense counsel went into extensive discourse on the record with appellant to ensure that he understood the advantageous components of the plea proposal and understood the countervailing risks associated with proceeding on all counts to trial.

{¶ 15} Appellant was further reminded that he was already on active probation for prior criminal offenses and of the issues arising from proceeding to trial. Appellant repeatedly and unequivocally asserted his understanding and his fervent wish to proceed to trial.

{¶ 16} Appellee first called the employee on duty at Barney's Convenience Mart to testify. This witness testified that she was familiar with the officer whose vehicle was struck by appellant. She testified that this officer would routinely stop by the store on his way home from work. The witness further testified that she heard appellant's car stereo

4.

blaring loudly just prior to appellant backing his vehicle up and striking the bumper of the officer's vehicle.

{¶ 17} The witness proceeded to testify that appellant denied striking the truck and became belligerent with the officer. She testified that she observed appellant refuse to cooperate, attempt to leave the scene, and physically push and strike the officer. On cross-examination, the witness elaborated that she had stepped out of the store and was standing outside directly observing and hearing these events in close proximity as they occurred.

{¶ 18} The officer who had the encounter with appellant next testified to the trial court. The officer testified that he had stopped at the store to check on things and to purchase an item, as was his customary routine. The officer immediately noticed appellant's loud music blaring from his car stereo and gave a look at appellant in the hopes that the music volume would be properly adjusted downwards. On the contrary, appellant turned the music up even louder, directed a smile or smirk at the officer, and backed up striking the officer's vehicle.

{¶ 19} The officer testified that appellant next conveyed that he was going to leave the scene. The officer replied that he could not leave yet as the impact may have damaged the sensors on the officer's vehicle. Appellant proceeded to tell the officer that he was leaving the scene, that the officer had no right to stop him, and that it was none of the officer's business whether appellant was in possession of a weapon. The officer called for back-up.

5.

{¶ 20} While awaiting arrival of the additional officers, appellant told the officer that he was going to assault him and assumed a boxer's stance. Appellant shoved and struck the officer in the chest. Appellant was placed under arrest.

{¶ 21} Appellant next elected to testify to the trial court on his own behalf. Appellant testified that he had stopped at the Barney's Convenience Mart to purchase lottery tickets and an alcoholic beverage. Appellant conceded that he was sitting in his vehicle scratching off the lottery tickets loudly playing his music. Appellant elaborated, "I didn't open my drink or nothing. I wait [until] I get home."

{¶ 22} Appellant further testified that he observed the officer giving him a look and that he understood the look to indicate a desire to turn the volume of the music down. Despite acknowledging that the music was loud, appellant did not turn the music down. Appellant explained his subjective, inaccurate opinion that, "He didn't have that right. It's private property."

{¶ 23} Appellant then backed out and started to drive away. Appellant stopped when the officer ran out telling him that he had just struck his vehicle. Appellant denied striking the vehicle, yet proceeded to contradictorily explain that the, "Damage that was on my car was a little scruff."

{¶ 24} Appellant testified as to his subjective opinion that the officer was not on duty and had no right to do anything in connection to any of these matters. In response to appellant's repeated improper, unsupported legal conclusions interspersed throughout his

6.

testimony, the trial court finally stated to appellant, "You seem to be stating an awful lot of legal facts here. What law school did you go to?"

{¶ 25} The record further reflects that the trial court pointed out that appellant's claimed offense at the officer's use of a curse word at appellant following appellant's striking of the officer's vehicle was unconvincing given appellant's own use of the same precise curse word directed at the officer during the same verbal exchange.

{¶ 26} Lastly, the record reflects that contrary to appellant's contention of being maltreated by the trial court, and that alleged maltreatment rising to the level of a constitutional breach, both appellant and counsel for appellant were given expansive latitude during the trial and counsel for appellant was even given leave of the court to reopen the case to enable appellant to provide additional testimony and elaborate on earlier testimony after the defense had rested and after appellant himself had indicated he had nothing further to add.

{¶ 27} At the conclusion of the matter, the trial court succinctly stated, "[Appellant] made some erroneous legal conclusions. First of all, the officer can tell him to turn down his radio. [T]here is a law in Toledo about the volume of your radio. Secondly, he can, as an officer, say stay here. He can do all of that. Even though Mr. Cox doesn't think he can." Appellant was found guilty on all counts. This appeal ensued.

7.

{¶ 28} In the sole assignment of error, appellant alleges that the trial court was biased against him and he was denied his constitutional right to due process. We do not concur.

{¶ 29} Evid.R. 614(B) establishes, "The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party."

{¶ 30} We have carefully reviewed and considered the record of evidence in this matter. Nothing in the record demonstrates a breach in appellant's right to due process. On the contrary, the record reflects that appellant, and counsel for appellant, were both granted ample leverage in their defense of this case. The record reflects that appellant systematically tendered unsupported and irrelevant legal conclusions both at the time of the underlying incident, as well as during the subsequent bench trial.

{¶ 31} The record reflects that although appellant became agitated at being corrected by both the police officer whose vehicle he struck, as well as subsequently by the trial court itself, in response to appellant's numerous mistaken notions, no breach of appellant's right to due process transpired in the course of this matter.

{¶ 32} Wherefore, we find appellant's assignment of error not well-taken. The judgment of the Toledo Municipal Court is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

8.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.            _____
                                              JUDGE

Thomas J. Osowik, J.       
                                _____

James D. Jensen, J.             JUDGE
CONCUR.

                                _____
                                              JUDGE